UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X
In re:                                          :
                                                :
SYNCAPSE CORP.,                                 :    Chapter 15
                                                :
        Debtor in a Foreign        :    Case No.: 13-12410 (SMB)
        Proceeding,                :
                                                :
---------------------------------------- X

## EX PARTE APPLICATION FOR PROVISIONAL RELIEF
## PENDING RECOGNITION OF A FOREIGN MAIN PROCEEDING

       MNP LTD. (the "Petitioner" or "Receiver"), as the court appointed receiver of SYNCAPSE CORP. (the "Company"), the foreign representative in proceedings under section 243(1) of the Canadian *Bankruptcy and Insolvency Act*, R.S.C. 1985,c. B-3, as amended (the "BIA") and section 101 of the Courts of Justice Act, R.S.O. 1990, c. C.43, as amended (the "CJA") (the "Canadian Proceeding"), by its counsel, Perkins Coie LLP, respectfully makes this application ("Application") to this Court, pursuant to Sections 105(a) and 1519 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order to show cause with temporary restraining order substantially in the form annexed hereto as **Exhibit A**, prohibiting the commencement of proceedings against the Company or its property within the territorial jurisdiction of the United States, including any and all assets, undertakings and properties of the Company acquired for, or used in relation to a business carried on by the Company (collectively, "Assets"), and scheduling a hearing on the Petitioner's request for a preliminary injunction order substantially in the form attached hereto as **Exhibit B**. In support hereof, the Petitioner respectfully represents and states as follows:

LEGAL27373295.2

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Sections 109 and 1501 of the Bankruptcy Code and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984 and the Amended Standing Order of Reference M-431 dated January 31, 2012 (Preska, Acting CJ.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1410.

3. The statutory predicates for the relief requested herein are Sections 105(a) and 1519(a) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure, and Rule 65 of the Federal Rules of Civil Procedure.

**BACKGROUND**

4. On July 24, 2013, Petitioner filed a voluntary petition under Chapter 15 of the Bankruptcy Code, commencing this case. The Court is respectfully referred to the Petition filed, which is incorporated herein by reference, as well as the accompanying declaration of Alan Shiner dated July 25, 2013 in support pursuant to Local Bankruptcy Rule 9077-1(a) the ("Shiner Declaration").

5. The Petition was filed the day after the Ontario Superior Court of Justice (the "Canadian Court") under Section 243(1) of *Canada's Bankruptcy and Insolvency Act* appointed the Petitioner as Receiver for the Company to handle the liquidation of its Assets. .

**A.    The Company.**

6. The Company is a corporation governed by the *Canada Business Corporations Act* and has its registered office located in Toronto, Canada. Attached to the Shiner Declaration

is a copy of the Corporations Canada report for the Company obtained from Industry Canada on July 19, 2013.

7.  The Company is headquartered in Toronto, Canada, as product management and sales functions are there. Also, all invoicing is completed, and all cash is collected, in Toronto.

8.  The Company is engaged in technology-enabled services that leverages social data to enable smarter marketing for global, enterprise clients. These clients include Fortune 100 companies such as Coca-Cola and Johnson & Johnson.

9.  Since its inception in 2007, the Company has expanded rapidly. In 2009, the Company expanded its Toronto operations and opened an office in London, England, which is operated through its subsidiary Synscapse Limited, a company incorporated under the laws of the United Kingdom. In 2010, the Company opened an office in New York City, which is operated through its subsidiary Syncapse Inc., a company incorporated under the laws of the State of Delaware. In 2012, the Company acquired Clickable, Inc., a leading search and social media advertising company based in New York City. Through this acquisition, the Company expanded its sales and marketing operations in New York and established a presence in Asia with an R&D center in Gurgaon, India.

**B.    Secured Creditors.**

10.  <u>BDC Capital</u>. In September 2010, BDC Capital, Inc., a wholly-owned subsidiary of Business Development Bank of Canada ("BDC Capital") agreed to extend a loan facility in the amount of $2.0 million to the Company. The purpose of the loan was to provide financing to the Company for growth initiatives and for R&D purposes. The debt is secured by, among other things, a perfected general security agreement. The security interests were registered with the Province of Ontario listing collateral as inventory, equipment, accounts, and motor vehicles.

11.  <u>Silicon Valley Bank</u>.  Silicon Valley Bank ("SVB") has provided a secured operating line of credit to the Company.  As of July 2013, the Company is indebted to SVB in the amount of approximately US$1.5 million.  The Company has granted security in favor of SVB listing the collateral as inventory, equipment, accounts, and motor vehicle included.

12.  <u>Xerox Canada Ltd</u>.  Xerox Canada Ltd. has registered three financing statements under the Personal Property Security Act (Ontario) ("PPSA") against the Company.  The registrations list collateral classified as "equipment" and "other".

13.  <u>Royal Bank of Canada</u>.  Royal Bank of Canada registered a PPSA financing statement against the Company.

14.  <u>Dell Financial Services Canada Limited.</u>  Dell Financial Services Canada Limited registered PPSA financing statements against the Company listing collateral classified as "equipment" and "other."

15.  <u>Her Majesty in Right of Ontario Represented by the Ministry of Finance</u> registered a PPSA financing statement against the Company, listing collateral classified as inventory, equipment, accounts and other.

**C.  Financial Difficulties and Appointment of Receiver.**

16.  The Company has incurred significant and escalating financial losses in its past three completed fiscal years.  With the significant capital invested, the Company built a cost base far exceeding revenue and began to go through its cash and generate a significant net loss.  Based on the financial information for the Company, it is apparent that the Company is insolvent, and it does not have the ability to meet its current and future liabilities as they become due.

17.  On July 23, 2013, BDC Capital applied for a receiver to handle the liquidation of the Company.  The Company did not oppose the appointment of a receiver.  BDC Capital informed the Canadian Court:

LEGAL27373295.2

> In the event that the receivership application is granted, BDC Capital will be requesting that MNP as receiver be appointed as the foreign representative of the [Company] and be authorized to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code. … [S]uch relief will include a stay of proceedings against the [Company] in the United States to prevent its third-party service and hosting providers discussed above from terminating their contracts with the [Company] and denying access to valuable information to the receiver and the customers of the Syncapse Group that will be necessary to complete the sale process.

18. The Ontario Superior Court of Justice granted the application, and entered and order (the "Receivership Order") which provides that pursuant to Section 243(1) of the BIA, "MNP Ltd. is hereby appointed Receiver, without security, of all of the assets, undertakings and properties of the [Company] acquired for, or used in relation to a business carried on by the [Company], including all proceeds thereof." Receivership Order ¶ 2, at 2. A copy of the Receivership Order is attached to the Shiner Declaration as Exhibit C.

19. The Receivership Order specifically authorizes the Petitioner to act as foreign representative in proceedings outside of Canada, authorizes Petitioner to take any action necessary to have the Canadian Proceedings recognized in other jurisdictions and to obtain assistance from courts outside of Canada for orders in aid of the Receivership Order. In this regard, the Receivership Order provides:

> 27. THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States to give effect to this Order and to assist the Receiver and its agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Receiver, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Receiver and its agencies in carrying out the terms of this Order.
>
> 28. THIS COURT ORDERS that the Receiver be at liberty and is hereby authorized and empowered to apply to any court,

LEGAL27373295.2

> tribunal, regulatory or administrative body, wherever located, for the recognition of this order and for assistance in carrying out the terms of this Order, and that the Receiver is authorized and empowered to act as a foreign representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

Receivership Order ¶¶ 27-28, at 12.

20. As discussed below, without the interim relief requested herein, the Company is exposed to an imminent risk that its third-party service and hosting providers may terminate their contracts with the Company, jeopardizing any sale of the Assets of the Company, as well as being exposed to pre-judgment attachment, foreclosing upon or freezing of its assets, termination of its contracts required for the operation of the Company, and other actions that would result in a "race to the courthouse" by creditors.

## REQUEST FOR RELIEF

21. By this Application and in furtherance of its duties as the duly appointed Receiver of the Company, the Petitioner seeks: (i) immediate entry of ex parte provisional relief staying execution in the United States against any Assets of the Company, prohibiting all persons or entities from commencing any litigation or any other proceeding, including, without limitation, arbitrations, appeals, mediation or any judicial, quasi judicial, administrative or regulatory action, proceeding or process whatsoever, or taking any other action against or involving the Petitioner (with respect to the Company), the Company, or any of the Assets of the Company; and (ii) the scheduling of a hearing on the Petitioner's request for continuing provisional relief.

22. The Petitioner believes that granting the relief sought herein will best assure an economical, expeditious and equitable administration of the Company's estate. Moreover, rather than exposing the Company and its Assets to litigation that could lead to piecemeal distribution of its Assets, as well as additional costs and distraction from the administration of the estate, the

Petitioner will be afforded the "breathing room" to fulfill its duties and obligations set forth in the Receivership Order in the Canadian Proceeding.

23. The Petitioner further believes that unless this Court enjoins creditors from seizing the Assets of the Company and initiating any actions against the Company or its Assets, the Company will be immediately and irreparably harmed. If such relief is not granted, certain creditors will gain an advantage over other creditors, the Petitioner will be hindered in its efforts to carry out its duties under the Receivership Order in the Canadian Proceeding.

## BASIS FOR REQUESTED TEMPORARY RESTRAINING ORDER

**D.    Petitioner Seeks Immediate Interim Relief to Prevent a "Race to the Courthouse."**

24. The Petitioner requests immediate, interim relief from this Court in the form of a temporary restraining order and preliminary injunction enjoining the commencement or continuation of any litigation against the Company or its Assets *in rem* including continuation of any litigation against the Company or its Assets of which it has not yet received notice, and the seizure of any of the Company's Assets. *See* 11 U.S.C. § 1519. The Petitioner requests this interim stay until the recognition hearing in order to maintain the status quo and to avoid wasting assets of the Company or unfairly disadvantaging the Company's creditors.

25. Upon the Court's recognition of a foreign main proceeding, Section 1520(a)(1) of the Bankruptcy Code states that the automatic stay provisions of Section 362 of the Bankruptcy Code apply to protect the Company from commencement or continuation of any claims as well as any act to take possession of the Company's property. *See United States v. J.A. Jones Constr. Group, LLC*, 333 B.R. 637, 638 (E.D.N.Y. 2005) (stating that once a foreign bankruptcy proceeding is recognized, a wide range of relief immediately becomes available, including the automatic stay provision of Section 362).

**E.      The Relief Requested is Authorized Under the Bankruptcy Code.**

26.     Section 1519(a)(3) authorizes the Court to grant "relief of a provisional nature" from the time a Chapter 15 petition is filed until the court rules on that Chapter 15 petition, where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." *See* 11 U.S.C. § 1519(a). Section 1519(a) specifically allows the Court to enter relief of the kind requested herein. *Id.*, see also 11 U.S.C. §1521(a)(3), (4) and (7) (setting forth additional forms of relief allowed in a provisional order as incorporated by reference in 11 U.S.C. § 1519(a)(3)). Section 105(a) of the Bankruptcy Code also allows the Court to "issue any order . . . necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Section 105(a) has been cited in conjunction with former Section 304 of the Bankruptcy Code to allow bankruptcy courts to mold relief in near blank check fashion. *See In re Culmer*, 25 B.R. 621, 624 (Bankr. S.D.N.Y. 1982). As such, the relief sought by the Petitioner is within the broad power of this Court as clearly contemplated in sections 1519, 1521 and 105 of the Bankruptcy Code.

27.     Moreover, the relief requested by Petitioner, being exactly the kind of relief contemplated by the above provisions, has been granted in other Chapter 15 cases in this District. *See e.g. In re Daewoo Logistics Corp.*, Chapter 15, Case no. 09-15558 (BRL); *In re Korea Line Corp.*, Chapter 15, Case No. 11-10789 (REG); *In re Samsun Logix Corp.*, Chapter 15 Case No. 09-11109 (SMB); *In re Armada (Singapore) PTE. LTD.*, Chapter 15, Case No. 09-10105 (JMP), *In re Britannia Bulk Plc*, Chapter 15, Case No. 0814543 (REG).

28.     The injunctive relief requested is necessary as cited under prior Section 304 cases, to "prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group." *In re Banco Nacional de Obras v. Servicios Publico, S.N.C.*, 91 B.R. 661, 661 (Bankr. S.D.N.Y. 1988). It is also necessary so that the Company's affairs can be

-8-

centralized in a single forum in order to maximize the creditors' interests. *See Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976), cert denied, 429 U.S. 1093, reh'g denied, 430 U.S. 976 (1977).

29. Section 1519(e) provides that "[t]he standards, procedures, and limitations applicable to an injunction shall apply to [a request for provisional] relief under this section." See 11 U.S.C. § 1519(e). As discussed below, the Petitioner is able to show that it and the Company can meet the requirements for a temporary restraining order and preliminary injunction.

**F.    The Petitioner Satisfies the Requirements for a Temporary Restraining Order.**

30. The Petitioner meets the requirements for a temporary restraining order under Rule 65(b) of the Federal Rules of Civil Procedure, which is made applicable in this case by Rule 7065 of the Federal Rules of Bankruptcy Procedure. Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in order to obtain an ex parte temporary restraining order, the applicant must show that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." *See, e.g., TKR Cable v. Cable City Corp.*, 167 F.3d 196, 198 (3d Cir. 2001) (granting ex parte temporary restraining order against defendant to enjoin further sale of cable television descramblers); *Gorman v. Coogan*, 273 F. Supp.2d 131, 134 (D. Maine 2003) (issuing ex parte temporary restraining order to prevent corporation from indemnifying current directors' expenses in defending legal action because company faced imminent bankruptcy if temporary restraining order was not entered).

31. As described herein, the requested provisional relief is required to preserve the Company and its Assets, and to ensure that the Receiver may carry out its duties under the Receviership Order in the Canadian Proceeding. The threat to the Company's Assets and continued operation of the Company during the pendency of the Canadian Proceeding is very real and imminent.

32. Moreover, a hearing on actual notice to identified parties in interest, would be scheduled within ten days of entry of the TRO, and thus the period in which parties would be subject to the ex parte restraining order would be minimal. The order to show cause also provides that parties have a right to request relief from the TRO prior to the date scheduled for the hearing on the Preliminary Injunction Order on two business days' notice. *See, e.g., Fidelity Mortgage*, 550 F.2d at 55 (Rule 11-44 under the former Bankruptcy Act, which provided that a petition under Chapter XI of the Bankruptcy Act automatically stayed all proceedings against the debtor without prior notice to creditors, did not violate creditors' due process rights in light of the fact that it provided for a procedure for lifting the automatic stay).

**G.    The Petitioner Satisfies the Requirements for a Permanent Injunction.**

33. Petitioner also has satisfied the Second Circuit's standards for a permanent injunction. That standard requires that a court consider whether (i) the plaintiffs are successful on the merits of their claim, (ii) there is no available remedy at law, and (iii) the balance of equities favors granting such relief. *See Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087, 1096 (S.D.N.Y. 1989), aff'd 41 F.3d 1570 (2d Cir. 1994); *New York State National Organization for Women v. Terry*, 704 F. Supp. 1247, 1262 (S.D.N.Y.), aff'd as modified, 886 F.2d 1339 (2d Cir. 1989), cert. denied, 495 U.S. 947 (1990).

    **1.    Likelihood of Success on the Merits.**

34. The Petitioner and the Company will be entitled to relief identical to the provisional relief requested herein upon recognition of the Canadian Proceeding as a foreign main proceeding. See 11 U.S.C. §§ 1520 and 1521. Thus, the Petitioner must show that the Court likely will find that (i) the Canadian Proceeding is a Foreign Proceeding, (ii) the Petitioner is a Foreign Representative, and (iii) the Canadian Proceeding is a Foreign Main Proceeding in order to show a likelihood of success on the merits.

35.  <u>First</u>, the Canadian Proceeding constitutes a foreign proceeding. Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

> A collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

As noted above, the Canadian Proceeding was commenced pursuant to the BIA, the *Bankruptcy and Insolvency Act*. The Canadian BIA governs the Company's liquidation; as such, the Canadian Proceeding is a collective judicial proceeding in a foreign country under a law (the BIA) relating to the liquidation and reasonable and just distribution of estate assets to creditors. Like in the United States Bankruptcy Courts, affairs of the Company are subject to control or supervision by the Canadian Court.

36.  In sum, the Canadian Proceeding is (i) a collective judicial proceeding in a foreign country, (ii) in which the assets and affairs of the debtor are subject to supervision by a foreign court, and (iii) for the purpose of liquidation. Moreover, the BIA is a law relating to insolvency or adjustment of debt. Thus, under the plain meaning of section 101(23) of the Bankruptcy Code, the Canadian Proceeding is a foreign proceeding. Accordingly, this Chapter 15 case concerns a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code.

37.  <u>Second</u>, the Petitioner is a Foreign Representative. Section 101(24) of the Bankruptcy Code defines "foreign representative" as a "person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). In this case, the Petitioner is the duly appointed receiver of the Company and was specifically authorized to act pursuant to the Receivership Order as foreign representative of the Company with respect to the Canadian Proceeding. Accordingly, the Petitioner is a "foreign representative"

within the meaning of section 101(24) of the Bankruptcy Code and is therefore entitled to commence this case under Chapter 15 of the Bankruptcy Code.

38. <u>Third</u>, the Canadian Proceeding is a Foreign Main Proceeding. The Bankruptcy Code provides that a foreign proceeding for which Chapter 15 recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. See 11 U.S.C. § 1517(b)(1). The Company is a corporation governed by the *Canada Business Corporations Act* and both its headquarters and its registered office are located in Toronto, Ontario, Canada. Attached as **Exhibit A** to the Declaration of Alan Shiner is a copy of the Corporations Canada report for the Company obtained from Industry Canada on July 19, 2013. Thus, Canada is "ascertainable by third parties" as the Company's center of main interests. Accordingly, absent evidence to the contrary, given that the Canadian Proceeding is pending in Canada, the center of the Company's main interests, it should be recognized as a foreign main proceeding as defined in Section 1502(4) of the Bankruptcy Code.

### 2. Inadequacy of Legal Remedy

39. Irreparable harm is one basis for establishing the inadequacy of any legal remedy. *Travellers*, 722 F. Supp. at 1096. It has been consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988). As described above and herein, the risk of such irreparable harm is clearly present here. The successful administration of the Company requires that the resolution of all claims be centralized in the Canadian Proceeding without creditors obtaining preferences and interfering with the Company's assets.

### 3. Balancing the Hardships

40. The balancing of the hardships weighs decidedly in favor of the Petitioner. Enjoining all litigation against the Company and the attachment, seizure, transfer and lien and/or judgment enforcement of any parties as against the Company or its Assets *in rem* will prevent their permanent loss to the estate and will cause minimal hardship to any persons subject to the injunctions. Indeed, the Company's creditors will benefit from Petitioner's efforts to preserve and maximize the value of the Company's estate as such an injunction will prevent the Company's Assets from being permanently lost. All creditors will be able to participate in the Canadian Proceeding on an equitable basis with all other similarly situated creditors.

41. No previous application for the relief requested in this Application has been made in this or any other court.

**Waiver of Federal Rule of Civil Procedure 65(c)**

42. Bankruptcy Rule 7065 expressly provides that "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)." To the extent Rule 65 of the Federal Rules of Civil Procedure applies, Petitioner believes that the security requirements imposed by Rule 65(c) are unwarranted under the circumstances and, accordingly, respectfully requests a waiver of such requirements pursuant to Bankruptcy Rule 7065.

### CONCLUSION

WHEREFORE, the Petitioner respectfully requests that this Court (i) enter, substantially in the form annexed hereto as Exhibit A, the proposed order to show cause with temporary restraining order, (ii) schedule a hearing to consider the Petitioner's request for continuing provisional relief, (iii) enter the proposed preliminary injunction order, substantially in the form

annexed as Exhibit B and (iv) grant any such other relief as this Court determines is fair and just under the circumstances.

| | |
|---|---|
| Dated: New York, New York.<br>July 24, 2013 | Respectfully submitted,<br><br>PERKINS COIE LLP<br>Attorneys for MNP Ltd., Receiver<br>  of Syncapse Corp.<br><br><br>By:*/s/ Schuyler G. Carroll*<br>     Schuyler G. Carroll<br>30 Rockefeller Plaza<br>New York, New York  10112<br>Tel: 212-262-6900<br>SCarroll@perkinscoie.com |